

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: March 11, 2010**

_Craig A. Gargotta_
_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 06-11730-CAG |
| RICHARD H. ACLIN and, | § | |
| REBECCA J. ACLIN, | § | CHAPTER 13 |
| Debtors. | § | |

### ORDER GRANTING IN PART, DENYING IN PART, APPLICATION OF DOUGLAS J. POWELL, ATTORNEY FOR DEBTORS, TO ALLOW COMPENSATION AND REIMBURSEMENT OF SUPPLEMENTAL FEES AND EXPENSES RELATING TO DEBTORS' MOTION TO MODIFY CHAPTER 13 PLAN, AMENDED MOTION TO MODIFY CHAPTER 13 PLAN, THE CHAPTER 13 TRUSTEE'S MOTION TO MODIFY CHAPTER 13 PLAN, AND THE DEBTORS' APPLICATION TO INCUR DEBT

Came on to be considered on January 15, 2010, the Application of Douglas J. Powell, Attorney for Debtors, To Allow Compensation and Reimbursement of Supplemental Fees and Expenses Relating to Debtors' Motion to Modify Chapter 13 Plan, Amended Motion to Modify Chapter 13 Plan, The Chapter 13 Trustee's Motion to Modify Chapter 13 Plan, and the Debtors' Application to Incur Debt (doc. #96) (the "Application" or "Applicant") and the Trustee's Response thereto (doc. #97). The Application seeks fees in the amount of $11,688.75. Further, the Applicant seeks fees of $1,111.25 for the preparation of the fee application for a total amount

of $12,801.25. No reimbursement for expenses is sought in connection with the fee application. The Court held a hearing on the matter, received evidence, and took the matter under advisement. Accordingly, the Court grants in part, and denies in part, the Application. Applicant will be granted fees in the amount of $1,175.00.

## BACKGROUND

This matter is referred to this Court under the District Court's Standing Order of Reference. The Court has subject matter jurisdiction under 28 U.S.C. §157(a) and §1334(b). Venue is proper under 28 U.S.C. §1409. This matter is a core proceeding under 28 U.S.C. §157(b)(2)(A) (matters concerning the administration of the estate). The Court may render findings of fact and conclusions of law as set forth in Fed. R. Bankr. Proc. 7052(a)(1) and is deemed a contested matter pursuant to Fed. R. Bankr. Proc. 9014.

Debtors filed their Chapter 13 bankruptcy on October 30, 2006. Debtors' first three proposed Chapter 13 plans were denied. Debtors' Fourth Amended Chapter 13 Plan (doc. #49) was confirmed on August 24, 2007 (doc. #56), nearly eleven months after filing bankruptcy. As detailed herein, the Debtors and the Chapter 13 Trustee then engaged in a series of proposed plan modifications relating to the Debtors' need to repair the foundation of their home:

| | |
|---|---|
| 1/12/09 | Debtors' Motion to Modify Plan in Response (doc. #69) |
| 1/21/09 | Debtors' Amended Motion to Modify Plan in Response (doc. #70) |
| 5/18/09 | Trustee's Motion to Modify Plan (doc. #81) |
| 5/19/09 | Court's Denial (at hearing) of Debtors' Amended Motion to Modify Plan in Response |
| 6/5/09 | Debtors' Response to Trustee's Motion to Modify Plan (doc. #83) |
| 6/17/09 | Debtors' Motion to Incur Debt (doc. #86) |
| 7/14/09 | Trustee's Objection to Debtors' Motion to Incur Debt (doc. #89) |

| | |
|---|---|
| 8/31/09 | Agreed Order Regarding Trustee's Motion to Modify Confirmed Plan (doc. #92) |
| 11/17/09 | Agreed Order Sustaining Debtor's Motion to Incur Debt (doc. #100) |

In addition, during the course of the filing of the above-referenced motions and responses were a series of Amended Schedules "I" and "J" filed on June 22, 2007; April 17, 2009; and June 8, 2009.

As detailed in the Application, Debtors initially sought a modification to their Chapter 13 Plan to retain two (2) of Mr. Aclin's quarterly bonuses to repair the foundation of Debtors' homestead. The Debtors' Fourth Amended Plan provides in relevant part that Mr. Aclin's quarterly bonuses are to be remitted to the Trustee as part of the Debtors' disposable income to be paid to creditors. Mr. Aclin is a traveling consultant for Oracle and works primarily in New York City. He is paid $9,600/month and receives quarterly bonuses based on individual performance and company profit. His bonuses vary quarter to quarter, but generally average in the $2,000-$5,000 range. The Trustee opposed the Motion to Modify on the premise that Debtors had not fully provided for all their income and/or justified expenses such that the Trustee could rely on Debtors' representations that the Debtor had no excess income other than Mr. Aclin's bonuses.

As was stated in Debtors' original Motion to Modify Plan, Debtors noticed, as early as the summer of 2008, numerous cracks in their home's walls, as well as doors that would not close properly. Debtors' neighbor was experiencing the same problems and ultimately had to pay for foundation repairs. Debtors received two (2) bids to repair their home, ranging from $5,625.00 to $8,190.00. Debtors also were going to seek a third bid as well. As a result, Debtors filed their original Motion to Modify seeking Court permission to use Mr. Aclin's third and fourth quarter bonuses for 2008 to pay for the foundation repairs as opposed to incurring debt.

Debtors amended their Motion to Modify Plan on January 21, 2009, including a third bid in the amount of $10,730.00. Debtors provided both pictures of the damage and the bids. There appears to be little dispute that their home's foundation needed repairs.

The Trustee's Objection to the Amended Motion indicates that the Trustee believes that Debtors had disposable income that exceeded what was reported in their Schedules. The Trustee argued that given the amount of Debtors' unsecured debt --$278,679.00 -- and the percentage distribution to unsecured creditors -- 17% -- the Trustee could not agree to let Debtors use Mr. Aclin's quarterly bonuses to pay for the foundation repairs until the Debtors accurately accounted for their income. The Trustee requested that the Debtors provide pay stubs, tax returns, and updated W-2 information. The Debtors also amended their Schedules.

After the Trustee received Debtors' financial documents, the Trustee filed her own Motion to Modify Chapter 13 Plan (doc. #81), proposing to increase Debtors' monthly plan payment. As a result of the information contained in Debtors' financial documents and their Amended Schedules "I" and "J," the Trustee concluded that the Debtors had not disclosed all of their income, and that Debtors had questionable increases in expenses which appeared to match their higher income. As such, the gridlock continued between the Debtors' desire to use Mr. Aclin's quarterly bonuses to repair the foundation, and Trustee's opposition given Trustee's belief that the Debtors had additional disposable income.

Not surprisingly, the Debtors objected to the Trustee's Motion to Modify (doc. #83). Debtors argued that they had provided for all of their disposable income, their expenses were accurate, and any additional expenses were explained, such as their son's college expenses increasing because he had to surrender his athletic scholarship due to injuries. The Court held a hearing on the Debtors' Amended Motion to Modify on May 19, 2009. Mrs. Aclin testified in

support of the Motion. Mrs. Aclin was unable to provide any testimony as to the Debtors' monthly income and expenses for her husband. She was also unable to testify if the Debtors' income and expenses were accurate based upon information that the Trustee had. As such, the Amended Motion to Modify was denied without prejudice because Debtors had not met their burden.

As a result of the Amended Motion to Modify being denied, the Debtors resorted to filing a Motion to Incur Debt and asked the Court's permission to obtain a loan from Mr. Aclin's 401(k) account to pay for the foundation. The Debtors explained the dire necessity of getting their home repaired, their lack of savings, and that their budget would permit them to pay back the loan within two (2) years. The Trustee initially objected to the Motion to Incur Debt, but then withdrew her opposition and the Court approved the Motion. In sum, it took nearly a year for the Debtors to obtain Court approval to repair their foundation through multiple motions and responses.

The Debtors' attorney and Trustee's attorney at the hearing on the Application acknowledged the course of the pleadings and ultimate disposition. Debtors' counsel further explained that changes in income were detailed in amended schedules and that increases in expenses were attributable to such items as life insurance coverage, long term disability insurance, Mr. Aclin's need to pay New York City taxes while working there, and increases in health care costs. There is no dispute that Debtors' counsel was required to work hours far in excess of what it would normally take to file and approve a motion to modify plan.

The Trustee's attorney stated that the difficulty in getting Court approval on any motion to modify was because the Debtors were either unable or unwilling to account properly for their disposable income and explain the necessity and/or amount of their expenses. The Trustee also

argues that the Debtors should have never filed the motions to modify without first demonstrating that all of their disposable income was being paid into the plan.

Other than counsel making arguments to the Court and providing their respective versions of why or why not the Application should be approved, Mr. Aclin was the only witness. Mr. Aclin provided limited testimony, explaining the background of the need for foundation repair, how his per diem with Oracle operates, and his belief why the Application should be approved. He also maintained that the difficulty in getting any motion to modify approved was due to the intransigence of the Trustee and her refusal to recognize his expenses as legitimate.

## ANALYSIS

Section 330(a)(4)(B) of the Bankruptcy Code provides for reasonable compensation to a debtor's attorney representing the interests of the debtor in connection with the bankruptcy case. As such, the court must determine the amount of the reasonable compensation and the benefit and the necessity of the services to the debtor as other factors set forth in §330. *See **Lamie v. United States Trustee***, 540 U.S. 526 (2004) (specifically finding that Chapter 13 debtor's attorneys are awarded fees under §330(a)(4)(B) rather than §330(a)(1)). In the context of a Chapter 13 case, the Austin Division has a Standing Order in place (dated March 1, 2007) that addresses most, but not all, fee arrangements in Chapter 13. The Standing Order Relating to Attorney Fees in Chapter 13 Cases in Austin provides for a fee arrangement in non-business cases that awards fees on a flat basis dependent upon the case being successfully confirmed on the first confirmation setting or thereafter. In addition, the Austin Standing Order provides for specific types of services that are to be included in this benchmark fee. Further, the Austin Standing Order does allow debtor's counsel to request additional fees for cause shown. In addition, the Standing Order does state that "an attorney in a Chapter 13 case may only request

and obtain an award of fees for additional services beyond those specified . . . [in the Standing Order] on motion, notice and hearing."

Applicant seeks fees in the total amount of $12,801.25. The Trustee raised a number of objections to the allowance of Applicant's compensation which are discussed below. The Court's Standing Order provides a standard fee of $450.00 to file a motion to modify and $200.00 to file a motion to incur debt. Debtor's response to the Trustee's motion to modify Chapter 13 plan is not covered by the Standing Order. These fee amounts include all Court appearances and expenses associated with the filing of the motion. Thus, under this Court's Standing Order, Applicant would be entitled to $650.00. If an applicant seeks compensation pursuant to the Standing Order, no time records are required and the fee is allowed absent an objection, and if needed, a hearing.

Because Applicant sought fees in excess of what the Standing Order allows, Applicant was required to file a fee application. It should be noted that Applicant was awarded $2,800.00 in fees previously for all his work filing and handling Debtors' Chapter 13 case. As such, Applicant is seeking four times the normal fee award for Chapter 13 cases.

Applicant filed his fee application and discussed the 12 factors set forth in ***In re First Colonial Corp. of America***, 544 F.2d 1291 (5th Cir. 1979) in support of his fee request. Notably, Applicant premised his fee award on the novelty and difficulty of the questions – the protracted litigation over getting the foundation repaired and the attendant litigation; the results obtained in that the Debtors increased their plan payment by $300.00/month for the remaining 24 months under the plan; and that the case was undesirable because counsel expended a significant amount of time on the matter without any interim disbursement. Finally, counsel argues that the fees are appropriate as related to other cases in this Court without citing any fee awards in Chapter 13

7

cases of this magnitude. Applicant also provided a fee application summary for the work performed that indicated $11,688.75 in fees ($275.00/hour for Applicant and $150/hour for legal assistant).

The Trustee filed her response to Applicant's request for additional attorney fees, arguing that pursuant to 11 U.S.C. §330(a)(3), the Court is directed to "consider the nature, the extent, and the value of" the legal services provided when determining the amount of reasonable compensation to award, taking into account "all relevant factors," including, but not limited to, "the time spent on such services, the rates charged for such services, and whether the services were necessary to the administration of, or beneficial at the time at which the services was rendered toward the completion of," the case. *See also **In re Cahill***, 428 F.3d 536 (5th Cir. 2005). In addition, the Trustee argued that under 11 U.S.C. §330(a)(3)(D), the court should also consider whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed.

The Trustee argued that there were duplicative time entries in which counsel bills for both his time and time spent by his legal assistant for the same task. The Trustee objected to excessive time entries included in the time records submitted by counsel in connection with the fee application. The Trustee objected to the time billed for preparation of the fee application, as the time charged is excessive.[1] Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application. 11 U.S.C. §330(a)(6). Finally, the Trustee argues that the Standing Order Relating to Attorney Fees in Chapter 13 Cases in the Austin Division sets the presumptively reasonable fee for the

---

[1] Applicant billed 3.5 hours at $275/hour and billed legal assistant time of 1.5 hours at $150/hour for a total of $1,112.50.

post-confirmation services provided, and counsel has failed to demonstrate an entitlement to fees beyond the presumptively reasonable fee for this matter.

The Court finds that the allowance of the fee award in this matter must first start with the presumptive allowed fee award under the Court's Standing Order. Under the Court's Standing Order, consumer lawyers are instructed on presumptive fees and cautioned that fee awards in excess of the rates published in the Standing Order must withstand judicial scrutiny and bear some relationship to the results obtained and attorney time performed.

11 U.S.C. §330(a)(4)(B) provides that the court "may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section."

> [T]he services rendered must relate to a realistically obtainable goal. Counsel for a debtor or debtor in possession will not be compensated for time spent in preparation of a plan which has no realistic hope of confirmation. *See **Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enterprises, Inc.)**,* 997 F.2d 1321, 1324 (10th Cir. 1993) (where inability of debtor to propose plan "should have been apparent to counsel from the commencement of the case," no compensation awarded); *accord,* **Keate v. Miller (In re Kohl)***,* 95 F.3d 713, 714-715 (8th Cir. 1996); *see also* **In re Saturley***,* 131 B.R. 509, 521 (Bankr.D.Me.1991).

**In re Phillips**, 291 B.R. 72, 82 (Bankr. S.D. Tex. 2003).

The Trustee asserts that at the time of the filing of the Debtors' modification, the Debtors and his counsel had in hand the pay stubs showing that the Debtors' income had substantially increased since confirmation, and should have known that the proposed modification to lower plan payments was not appropriate. Moreover, once the Trustee's office pointed out to counsel the deficiencies in the proposal, further work on the initial proposal was futile and bordered on frivolous. This Court must conduct an independent review of the reasonableness of time charged and may make appropriate reductions. **In re Argento**, 282 B.R. 108 (Bankr. D. Mass. 2002).

(There were pleadings for which the court felt excessive time was billed "in light of the substance and length of those pleadings" and fees were reduced accordingly.)

The Court agrees with the Trustee that fees requested are excessive and unwarranted. As noted herein, the Standing Order establishes a presumptive fee award for filing a motion to modify plan and motion to incur debt. The fees sought here bear no relationship to the presumptive fee structure. Second, relying on the 12 factors under ***First Colonial***, the Applicant does not meet his burden. Counsel is seeking fees in excess of $12,000.00, where the results obtained (from Applicant's perspective), is that the base amount of the plan was increased $7,200.00. As such, Applicant wishes to charge the estate nearly $13,000.00 for increasing the plan base amount $7,200.00. The results obtained do not meet the necessity of the fees expended. This also does not factor in the amount of debt incurred.

The Court agrees with Applicant that this case is undesirable in terms of the amount of time expended. That said, the Court agrees with the Trustee that the Applicant should have exercised appropriate billing judgment. *See **Phillips***, 291 B.R. at 82. Here, where it became apparent early in the case that the Trustee was unwilling to agree to a plan modification, Applicant should have either had the matter heard by the Court or withdrawn the motions to modify. Prolonged attempts at attempting to work this matter out without Court intervention resulted in unduly burdening the estate with excessive administrative fees.

More importantly, given the exigent circumstances for the need of the foundation repairs, the matter should have been put before the Court much earlier. As a result, the Court has to examine the propriety of the fees sought against a matter that the Court never fully adjudicated and took over 11 months to resolve. Simply put, the matter should have been decided earlier without resorting to protracted discussions that ultimately had no beneficial effect on the estate.

The Court is mindful that it did conduct one "evidentiary" hearing on the Debtors' Amended Motion to Modify with Mrs. Aclin testifying. Mrs. Aclin could not provide any probative testimony regarding the Debtors' income and expenses and repeatedly had to state that only her husband knew about their finances. In fact, the evidence was so deficient that the Court could not make any findings regarding the necessity of the motion to modify, and instructed the Debtors' counsel that he had not met his burden. This alone should have told counsel that success on the underlying pleadings was problematic at best.

Applicant cites for this Court's consideration the decision of *In re King*, 350 B.R. 327 (Bankr. S.D. Tex. 2006). In *King*, the Court awarded post-confirmation fees of $3,891.50 because the debtor repeatedly changed her mind regarding the foreclosure of her home, and whether she would agree to take appropriate measures to make payments on her arrears. Here, the Trustee consistently opposed the Debtors' request to modify the plan. As such, Debtors knew from the start that any motion to modify would be opposed. Further, the fact that the Debtors amended their schedules "I" and "J" three times suggests that the Debtors had difficulty in accurately detailing their income and expenses.

The Court finds that Applicant should be allowed the Standing Order amounts of $450.00 for filing the motions to modify and $200.00 for filing the motion to incur debt. In addition, the Court, after reviewing Applicant's timesheets, finds that Applicant should be awarded $450.00 for responding to the Trustee's Motion to Modify and 1.0 hours ($275/hour) for preparing and litigating his Application. All told, Applicant is entitled to additional fees of $1,175.00. The Applicant, while billing for time in excess of what the Court has allowed, has not met his burden in showing that the requested fees of $12,801.25 provided a benefit to the estate that can be measured against any net increases to the base amount to the Plan. Further, Applicant's efforts

only benefitted the Debtors in getting their foundation repaired.  The bankruptcy estate and the creditors should not be burdened with a reduction of nearly $13,000.00 in the plan base for a matter that should have been resolved much sooner than it was.  Said fees will be an allowed administrative claim and the base shall be increased accordingly.  All other relief is DENIED. SO ORDERED.

# # #